## WELTON v. THE STATE OF MISSOURI.

1. A license tax required for the sale of goods is in effect a tax upon the goods themselves.

2. A statute of Missouri which requires the payment of a license tax from persons who deal in the sale of goods, wares, and merchandise which are not the growth, produce, or manufacture of the State, by going from place to place to sell the same in the State, and requires no such license tax from persons selling in a similar way goods which are the growth, produce, or manufacture of the State, is in conflict with the power vested in Congress to regulate commerce with foreign nations and among the several States.

3. That power was vested in Congress to insure uniformity of commercial regulation against discriminating State legislation. It covers property which is transported as an article of commerce from foreign countries, or among the States, from hostile or interfering State legislation until it has mingled with and become a part of the general property of the country, and protects it even after it has entered a State from any burdens imposed by reason of its foreign origin.

4. The non-exercise by Congress of its power to regulate commerce among the several States is equivalent to a declaration by that body that such commerce shall be free from any restrictions.

ERROR to the Supreme Court of Missouri.

Welton was indicted, tried, and convicted in the Circuit Court for the County of Henry, in the State of Missouri, for selling goods without a license.

The first section of the statute under which the indictment was found is as follows: —

"Whoever shall deal in the selling of patent or other medicines, goods, wares, or merchandise, except books, charts, maps, and stationery, which are not the growth, produce, or manufacture of this State, by going from place to place to sell the same, is declared to be a peddler."

The other sections prohibit a person dealing as a peddler without license, and impose a penalty therefor, and prescribe the rate of charge for such license. No license is required for ing 'by going from place to place," the growth, produce, or manufacture of the State.

The Supreme Court, on appeal, affirmed the decision of the Circuit Court, on the ground that the statute applied solely to the internal commerce of the State, and made no discrimination against citizens of other States, but merely imposed a tax upon

a *calling* or a *profession*, and neither directly nor indirectly upon property.

For errors in this judgment the case is brought here.

*Mr. James S. Botsford* and *Mr. S. M. Smith* for the plaintiff in error.

The Supreme Court of Missouri erred in affirming the judgment of the Circuit Court of Henry County, and adjudging the statute of the State relating to peddlers and their licenses to be valid, and not in conflict with the Constitution of the United States.

The statute of a State, which declares that a person who deals in goods, wares, and merchandise not the growth, produce, or manufacture of such State, by going from place to place to sell them, is a peddler, and, as such, imposes a license tax upon him, while it imposes no such tax where the sale is made in the same manner of like articles grown, produced, or manufactured in such State, discriminates in favor of the latter against other States, is a regulation of commerce, and is contrary to the provisions of the Constitution of the United States. *Crow* v. *Missouri*, 14 Mo. 290; *State* v. *North & Scott*, 27 id. 464; 2 Story on the Constitution (4th ed.), sects. 1056–1076; *Corfield* v. *Coryell*, 4 Wash. C. C. 371; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Brown* v. *Maryland*, 12 id. 419; *Almy* v. *California*, 24 How. 169; *Crandall* v. *Nevada*, 6 Wall. 35; *Woodruff* v. *Parham*, 8 id. 123; *Hinson* v. *Lott*, id. 148; *Ward* v. *Maryland*, 12 id. 418; *Railroad Co.* v. *Pennsylvania*, 15 id. 232; *Railroad Co.* v. *Richmond*, 19 id. 589.

The statute attempts to derive a revenue from imports, and, to be valid, must have the sanction of Congress.

The courts below, in holding that it merely imposed a tax on the calling or profession of the vendor, and not upon the thing sold, ignore the doctrine of *Brown* v. *Maryland*, 12 Wheat. 444, that "a tax on the occupation of an importer is in like manner a tax on importation."

*Mr. John A. Hockaday*, Attorney-General of Missouri, and *Mr. A. H. Buckner*, contra.

The statute in question does not provide a system of taxation which discriminates prejudicially against articles manufactured beyond the limits of the State, and it cannot to any extent have that effect. *Osborne* v. *Mobile*, 16 Wall. 479.

It merely defines the calling or occupation of peddler, requires a license therefor at certain specified rates, and renders him liable to' a criminal prosecution if he pursues such calling or occupation without a license.   The right of a State to tax its own citizens for the prosecution of any particular business or profession within the State has not been doubted.   *Nathan* v. *Louisiana*, 8 How. 73; *Cummings* v. *Savannah*, R. M. Charlt. 26; *Roquet* v. *Wade*, 4 Ohio, 114; *Beal* v. *State*, 4 Blackf. 108; *Austin* v. *State*, 10 Mo. 593; *Simmons* v. *State*, 12 id. 268; 5 How. 504, 588; 7 id. 283; 55 Mo. 288; 8 Wall. 123.

Although the doctrine is clearly settled in this country, that the States may even regulate commerce, so long as Congress does not intervene by legislation (7 Pet. 221; 11 id. 102), the question does not arise in this case.   The act does not impose a tax upon property, nor does it prevent, or seek to prevent, the importation of any kind of goods whatever; and neither imposes conditions upon, nor places impediments in the way of, a free interchange of commodities with other states or countries.

The cost of the license is not controlled by the value of the goods to be sold, but by the mode in which the business is done. The foot peddler pays less for his license than a wagon or steamboat peddler, although his sales may largely exceed theirs.

As it is entirely within the province of the State to license and tax such avocations as its legislature may deem proper, and as the statute in question does not interfere with inter-State commercial relations, it is constitutional and valid.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes before us on a writ of error to the Supreme Court of Missouri, and involves a consideration of the validity of a statute of that State, discriminating in favor of goods, wares, and merchandise which are the growth, product, or manufacture of the State, and against those which are the growth, product, or manufacture of other states or countries, in the conditions upon which their sale can be made by travelling dealers. The plaintiff in error was a dealer in sewing-machines which were manufactured without the State of Missouri, and went from place to place in the State selling them without a license for that purpose.   For this offence he was indicted and convicted in one of

the circuit courts of the State, and was sentenced to pay a fine of fifty dollars, and to be committed until the same was paid. On appeal to the Supreme Court of the State, the judgment was affirmed.

The statute under which the conviction was had declares that whoever deals in the sale of goods, wares, or merchandise, except books, charts, maps, and stationery, which are not the growth, produce, or manufacture of the State, by going from place to place to sell the same, shall be deemed a peddler; and then enacts that no person shall deal as a peddler without a license, and prescribes the rates of charge for the licenses, these varying according to the manner in which the business is conducted, whether by the party carrying the goods himself on foot, or by the use of beasts of burden, or by carts or other land carriage, or by boats or other river vessels. Penalties are imposed for dealing without the license prescribed. No license is required for selling in a similar way, by going from place to place in the State, goods which are the growth, product, or manufacture of the State.

The license charge exacted is sought to be maintained as a tax upon a calling. It was held to be such a tax by the Supreme Court of the State; a calling, says the court, which is limited to the sale of merchandise not the growth or product of the State.

The general power of the State to impose taxes in the way of licenses upon all pursuits and occupations within its limits is admitted, but, like all other powers, must be exercised in subordination to the requirements of the Federal Constitution. Where the business or occupation consists in the sale of goods, the license tax required for its pursuit is in effect a tax upon the goods themselves. If such a tax be within the power of the State to levy, it matters not whether it be raised directly from the goods, or indirectly from them through the license to the dealer; but, if such tax conflict with any power vested in Congress by the Constitution of the United States, it will not be any the less invalid because enforced through the form of a personal license.

In the case of *Brown* v. *Maryland*, 12 Wheat. 425, 444, the question arose, whether an act of the legislature of Maryland,

requiring importers of foreign goods to pay the State a license tax before selling them in the form and condition in which they were imported, was valid and constitutional. It was contended that the tax was not imposed on the importation of foreign goods, but upon the trade and occupation of selling such goods by wholesale after they were imported. It was a tax, said the counsel, upon the profession or trade of the party when that trade was carried on within the State, and was laid upon the same principle with the usual taxes upon retailers or inn-keepers, or hawkers and peddlers, or upon any other trade exercised within the State. But the court in its decision replied, that it was impossible to conceal the fact that this mode of taxation was only varying the form without varying the substance; that a tax on the occupation of an importer was a tax on importation, and must add to the price of the article, and be paid by the consumer or by the importer himself in like manner as a direct duty on the article itself. Treating the exaction of the license tax from the importer as a tax on the goods imported, the court held that the act of Maryland was in conflict with the Constitution; with the clause prohibiting a State, without the consent of Congress, from laying any impost or duty on imports or exports; and with the clause investing Congress with the power to regulate commerce with foreign nations.

So, in like manner, the license tax exacted by the State of Missouri from dealers in goods which are not the product or manufacture of the State, before they can be sold from place to place within the State, must be regarded as a tax upon such goods themselves; and the question presented is, whether legislation thus discriminating against the products of other States in the conditions of their sale by a certain class of dealers is valid under the Constitution of the United States. It was contended in the State courts, and it is urged here, that this legislation violates that clause of the Constitution which declares that Congress shall have the power to regulate commerce with foreign nations and among the several States. The power to regulate conferred by that clause upon Congress is one without limitation; and to regulate commerce is to prescribe rules by which it shall be governed, — that is, the condi-

tions upon which it shall be conducted; to determine how far it shall be free and untrammelled, how far it shall be burdened by duties and imposts, and how far it shall be prohibited.

Commerce is a term of the largest import. It comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities between the citizens of our country and the citizens or subjects of other countries, and between the citizens of different States. The power to regulate it embraces all the instruments by which such commerce may be conducted. So far as some of these instruments are concerned, and some subjects which are local in their operation, it has been held that the States may provide regulations until Congress acts with reference to them; but where the subject to which the power applies is national in its character, or of such a nature as to admit of uniformity of regulation, the power is exclusive of all State authority.

It will not be denied that that portion of commerce with foreign countries and between the States which consists in the transportation and exchange of commodities is of national importance, and admits and requires uniformity of regulation. The very object of investing this power in the General Government was to insure this uniformity against discriminating State legislation. The depressed condition of commerce and the obstacles to its growth previous to the adoption of the Constitution, from the want of some single controlling authority, has been frequently referred to by this court in commenting upon the power in question. "It was regulated," says Chief Justice Marshall, in delivering the opinion in *Brown* v. *Maryland*, "by foreign nations, with a single view to their own interests; and our disunited efforts to counteract their restrictions were rendered impotent by want of combination. Congress, indeed, possessed the power of making treaties; but the inability of the Federal Government to enforce them became so apparent as to render that power in a great degree useless. Those who felt the injury arising from this state of things, and those who were capable of estimating the influence of commerce on the prosperity of nations, perceived the necessity of giving the control over this important subject to a single government.

It may be doubted whether any of the evils proceeding from the feebleness of the Federal Government contributed more to that great revolution which introduced the present system than the deep and general conviction that commerce ought to be regulated by Congress." 12 Wheat. 446.

The power which insures uniformity of commercial regulation must cover the property which is transported as an article of commerce from hostile or interfering legislation, until it has mingled with and become a part of the general property of the country, and subjected like it to similar protection, and to no greater burdens. If, at any time before it has thus become incorporated into the mass of property of the state or nation, it can be subjected to any restrictions by State legislation, the object of investing the control in Congress may be entirely defeated. If Missouri can require a license tax for the sale by travelling dealers of goods which are the growth, product, or manufacture of other states or countries, it may require such license tax as a condition of their sale from ordinary merchants, and the amount of the tax will be a matter resting exclusively in its discretion.

The power of the State to exact a license tax of any amount being admitted, no authority would remain in the United States or in this court to control its action, however unreasonable or oppressive. Imposts operating as an absolute exclusion of the goods would be possible, and all the evils of discriminating State legislation, favorable to the interests of one State and injurious to the interests of other states and countries, which existed previous to the adoption of the Constitution, might follow, and the experience of the last fifteen years shows would follow, from the action of some of the States.

There is a difficulty, it is true, in all cases of this character, in drawing the line precisely where the commercial power of Congress ends and the power of the State begins. A similar difficulty was felt by this court, in *Brown* v. *Maryland*, in drawing the line of distinction between the restriction upon the power of the States to lay a duty on imports, and their acknowledged power to tax persons and property; but the court observed, that the two, though quite distinguishable when they do not approach each other, may yet, like the intervening

colors between white and black, approach so nearly as to per-
plex the understanding, as colors perplex the vision in marking
the distinction between them; but that, as the distinction exists,
it must be marked as the cases arise.   And the court, after
observing that it might be premature to state any rule as being
universal in its application, held, that, when the importer had so
acted upon the thing imported that it had become incorporated
and mixed up with the mass of property in the country, it had
lost its distinctive character as an import, and become subject
to the taxing power of the State; but that, while remaining
the property of the importer in his warehouse in the original
form and package in which it was imported, the tax upon it
was plainly a duty on imports prohibited by the Constitution.

Following the guarded language of the court in that case, we
observe here, as was observed there, that it would be premature
to state any rule which would be universal in its application to
determine when the commercial power of the Federal Govern-
ment over a commodity has ceased, and the power of the State
has commenced.   It is sufficient to hold now that the commer-
cial power continues until the commodity has ceased to be the
subject of discriminating legislation by reason of its foreign
character.  That power protects it, even after it has entered the
State, from any burdens imposed by reason of its foreign origin.
The act of Missouri encroaches upon this power in this respect,
and is therefore, in our judgment, unconstitutional and void.

The fact that Congress has not seen fit to prescribe any
specific rules to govern inter-State commerce does not affect the
question.   Its inaction on this subject, when considered with
reference to its legislation with respect to foreign commerce, is
equivalent to a declaration that inter-State commerce shall be
free and untrammelled.  As the main object of that commerce
is the sale and exchange of commodities, the policy thus estab-
lished would be defeated by discriminating legislation like that
of Missouri.

The views here expressed are not only supported by the case
of *Brown* v. *Maryland*, already cited, but also by the case of
*Woodruff* v. *Parham*, 8 Wall. 123, and the case of the *State
Freight Tax*, 15 Wall. 232.   In the case of *Woodruff* v. *Par-
ham*, Mr. Justice Miller, speaking for the court, after observing,

with respect to the law of Alabama then under consideration, that there was no attempt to discriminate injuriously against the products of other States or the rights of their citizens, and the case was not, therefore, an attempt to ˮ tter commerce among the States, or to deprive the citizens of other States of any privilege or immunity, said, " But a law having such operation would, in our opinion, be an infringement of the provisions of the Constitution which relate to those subjects, and therefoɩe void."

> *The judgment of the Supreme Court of the State of Missouri must be reversed, and the cause remanded, with directions to enter a judgment reversing the judgment of the Circuit Court, and directing that court to discharge the defendant from imprisonment, and suffer him to depart without day.*