Mr. Justice Bradley
dissenting:
Byr the record it appears that the relator lias been fined the sum .of $55 by the Police Court of the District of Columbia, and that in default of paymeht he lias been committed to the custody of the Iutendent .of the Washington Asylum, having been- tried and convicted upon an information charging him with engaging in the business,of a peddler, in selling from house to house an article called soapine, without first having obtained a license therefor. By the agreed statement of facts, it appears, that the relator is a regular salaried agent of the Kendall Manufacturing-Company, a corporation under the laws of the State of Rhode Island, and-there engaged in the manufacture of soapine, a washing powder and substitute for soap ; that the soapine sold was sent to the relator by his employer, direct, *361 in a box, and was the property of the manufacturer, although nominally it formed part of a number of boxes sold to some resident dealer at wholesale rates, and without being delivered to such dealer it was repurchased by the manufacturer at retail price.
The effect of this arrangement was to give the dealer an additional discount on his purchase to the extent of the difference between the wholesale and retail price of the box retained, and the sale of the soapine in the retained boxes was intended to advertise the article and stimulate its sale.
This box was opened by the agent of the manufacturer, and its contents, in small packages, sold from door to door at retail price. The manufacturer thereby made no profit on the sales. The relator had no property interest either in the soapine or in the proceeds of the sales.
The relator is charged with the violation of an act of the Legislative Assembly of the District of Columbia, of August 23, 1871, amended June 20, 1872, entitled “An Act imposing a license on trades, business and professions practiced and carried on in the District of Columbia,” the 36th section of which reads as follows: “Peddlers shall pay fifty dollars annually. Any person who may offer for sale from house to house, or from a wagon, dry goods, fancy goods, notions, toys, and similar articles, delivered at the time of the sale, shall be known as a peddler.”
In behalf of the relator it is claimed :
1. That he is not a peddler, but a salaried agent of a manufacturing company, and therefore not included in the law.
2. That if the Act requires of a non-resident manufacturer a license fee as a condition to selling and delivering its manufactures by its agent, it is void as in conflict with Art. I, Sec. 8, Cl. 3, of the Constitution of the United States-
First, let us inquire whether the relator comes within the provisions of the law under which he was charged and sentenced.
*362 It needs no examination of definitions by lexicographers to reach the conclusion that the relator was not a peddler in the ordinary signification of that word. By Endicott, J., in a Massachusetts case, a peddler is defined as “ an itinerant trader who goes from place to place and from house to house, carrying for sale and exposing the goods» wares, and- merchandise which he carries. He generally deals in small, cheap articles, such as he can conveniently carry in a cart or on his person.”
In Randolph vs. Yellowstone Kit, 83 Ala., 472, it is said: “The term peddler has many definitions, more or less full. * * * Its popular definition is a small retail dealer, who, carrying his merchandise with him, travels from house to house or from place to place, exposing his goods for sale and selling them.”
According to these definitions and to the popular and accepted meaning of the term, he is a dealer or trader in small wares who has no permanent place of business, but who carries his wares with him from place to place or from house to house. He is one who buys to sell again, and whose gains are the profits realized on small sales. A man-' ufacturer who sends his agents into other communities than that of his residence to vend his product, either immediately or by sample, is not a trader or peddler, nor is the agent employed by him in such business. Commonwealth vs. Campbell, 33 Pa. St., 380.
I think that the distinction is well marked and is reasonable, and that this relator cannot be held under the act referred to, unless it is by the force and stress of the legislative definition which accompanies the provision.
This definition is, “Any person who may offer for sale from house to house or from a wagon, dry goods, fancy goods, notions, toys, and similar articles, delivered at the time of sale,” shall be considered a peddler.
The language used is broad enough to cover the case of any person, not a trader or a dealer, who may offer for sale *363 from house to house a single article. But its sense must be governed and restricted by the subject to which it relates,, and by the connection in which it is used. It relates to peddlers, those who are popularly known as such, and the definition so applied and limited is relieved of the indefiniteness which otherwise attaches to it. It was intended to apply to perambulating dealers who carry about with them a limited stock of small articles, “dry goods, notions, fancy goods, toys, and similar articles,” for sale.
If this section was intended to apply to others not peddlers in the well understood popular signification of the word, why was not the limiting term omitted, and the broad descriptive definition left to stand alone as indicating the class iutended to be taxed ?
If the broad and comprehensive meaning claimed for it was intended by the Legislative Assembly (which I doubt), then I hold that it was not in its power, by its ordinance, to include persons as peddlers who do not fall within the-ordinary meaning of that term. Mays vs. Cincinnati, 1 Ohio St., 268.
The broad meaning attributed to the provision in question would include a person who, “as agent for non-resident manufacturers or wholesale dealers, offers for sale merchandise,” unless he restricted his offers for sale to one house. But this class was distinctly taxed as commercial agents,, under the Act of August 23, 1871, and required to pay a license fee of $250. By the amendment of this Act of June 20, 1872, commercial agents are required to pay $200 annually, and they are defined as “every person whose business it is, as agent, to offer for sale goods, wares, or merchandise, by sample, catalogue, or otherwise.” Acts 2 Sess.,. page 60.
Taking the original section it is apparent that it would include the ease'of the relator, but might not include one-who offered for sale by sample, or catalogue. The amendment specifically included agents who are sellers by sample- *364 •or by catalogue, and all others who otherwise offer for sale. Clearly, the third section of the act was intended to and •does cover cases like, that of the relator, as “ commercial agents.” The difference between the tax of $50 required of a peddler, and $200 required of a “commercial agent,” indicates that the former applies to the small perambulating trader, while the latter applies to the agents of manufacturers and wholesale dealers.
The conclusion I have reached is that the relator is not a peddler within the purpose or intent of the Act of the Legislative Assembly of the District of Columbia, under which he was prosecuted, convicted and sentenced.
Upon the other point made by the relator, that the act is void as an attempt to regulate “commerce among the ■States,” a subject which under the Constitution is committed ■exclusively to the Congress of the United States, it is contended for the District of Columbia that the provision of the Raw in question, as construed and applied to the case of the ■relator, is not repugnant to the Constitution because the importer (The Kendall Mfg. Co.) had so acted upon the thing imported, that it had become incorporated and mixed up in the mass of property in the District, and that it had lost its distinctive character of an import, and become subject to the taxing power of the District of Columbia.
By the District of Columbia it is claimed that a number ■of boxes of soapine are sold and delivered to a consignee here, and that one of these original packages is purchased from the consignee after it had become part of the general property of the District, and is then broken and sold by .the •agent. But the agreed fact is that the box which is broken .and sold by the agent from door to door, never passes into the hands of the dealer, but is sent to the agent direct from the manufacturer. It is the property of the non-resident manufacturer when it enters the District, and it continues to be its property in the hands of its agent until it is sold and delivered to the retail purchasers.
*365 By the majority of the court it is held that the original package or box broken and sold by the agent became a part of the general mass of property, lost its distinctive character-as an import, and became subject to taxation the moment the original package in the hands of the agent was broken.
In this I am not able to concur, and.I approach this constitutional feature of the subject with diffidence'and hesitation.
The principle embodied in the proposition that the contents of the box of soapine became a part of the mass of the property in this District when the original package was broken in the hands of the agent, for sale, had its origin in the opinion by Marshall, C. J., in the case of Brown vs. Maryland, 12 Wheat., 442.
In that case, an Act of Maryland requiring importers of certain-foreign commodities to take out a license for which they should pay $50, before they should be authorized to sell, was declared to be repugnant to that provision of the Constitution which declares that “no State shall, without the consent of Congress, lay any imposts or duties on imports,”' etc., and also to the provision which declares that “ Congress shall have power to regulate commerce with foreign nations and among the several States, and with the Indian tribes.”
The importer had sold one package of foreign dry goods without having a license.
To the suggestion that the imported article must at sometime be subject to the taxing power of the State, and that such power must attach when it came into the State, the court says, page 451: “ We cannot admit that this point of time is the instant that the articles enter the country. It is, we think, obvious that this construction would defeat the prohibition. The constitutional prohibition on the States to lay a duty on imports — a prohibition which' a vast majority of them must feel an interest in preserving — may certainly come in conflict with their acknowledged power to *366 tax persons and property within their territory. The power and restriction on it, though quite distinguishable when they do not approach each other, may yet, like the intervening colors between white and black, approach so nearly as to perplex the understanding as colors perplex the vision in marking the distinction between them. Yet the distinction exists, and must be marked as the oases arise. Till they do arise it might be premature to state any rule as being-universal in its application. It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer in his warehouse in the original form or package in which it was imported, a tax upon it “is too plainly a duty on imports to escape the prohibition of the Constitution.”
It is important to remark that the court is here dealing with the subject of the exclusive power of Congress to impose duties upon imports, and not with the subject of the power to regulate commerce with foreign nations, or among the States.
There can be no doubt that the license tax imposed in the case at bar as a condition to his exercising the right to sell the goods brought into the District of Columbia, by the non-resident manufacturer, is a tax upon the goods themselves in his hands.’ “All must perceive that a tax on the sale of an article imported only for sale, is a tax on the article itself.” Brown vs. Maryland, 12 Wheat., 444.
A license tax imposed upon “drummers,” or persons who offer for sale by sample, so far as concerns the sale of or offer to sell goods not yet brought into the State, is clearly a tax on the goods themselves, and a regulation of interstate commerce. Robbins vs. Shelby Taxing District, 120 U. S., 489; Asher vs. Texas, 128 U. S., 129; Weston vs. Missouri, 91 U. S., 275.
*367 Is the tax imposed by this act upon goods brought into the District of Columbia, for sale by a non-resident manufacturer, as a condition precedent to his "right to sell, a regulation of interstate commerce?
In Brown vs. Maryland, under the consideration of this provision of the Constitution the Chief Justice says:
“The conclusion that the right to sell is connected with the law permitting importation as an inseparable incident is inevitable.” * * * “Any penalty inflicted on the importer for selling the article in his character of importer must be in opposition to the act of Congress which authorizes importation. Any charge on the introduction and incorporation of the articles into and with the mass of property in the country must be hostile to the power given to Congress to regulate commerce, since an essential part of that regulation and principal object of it is to prescribe the regular means for accomplishing that introduction and incorporation.” ^
It is then clearly held that the importer has the right to sell the import in its original package, without the burden of any additional tax by the State, by way of license or otherwise, and that it does not lose its exemptive character so long as it remains the property of the importer, in his luarehouse, in the original form or package in which it was imported.
When does the imported merchandise become a part of the general property of the State so as to become subject to its general taxing power ?
In the case of the resident importer the line of distinction is drawn at the point of sale by the importer, or at the point when the .imported package is broken in his hands, when it has lost its distinctive character as an import, and the imported goods mingled with his other goods become a part of the mass of the property of the State. But this rule was not stated as being one of universal application, and its application to the case of goods carried from one State into *368 another has been denied. Woodruff vs. Parham, 8 Wall., 123; Brown vs. Houston, 114 U. S., 622.
In the former ease an ordinance of the City of Mobile imposing a tax upon sales by auctioneers was sustained, when applied to sales by them of goods, the product of other States than Alabama, received by them as consignees- and agents and sold in the original and unbroken packages.
In the latter case, coal shipped from Pittsburgh to New Orleans, and resting there in the boats and original condition, packages, in which it was shipped, held for sale for the agents, was held liable to the assessment of a tax imposed generally upon property within the State; that the coal was a commodity in the market of New Orleans, and that it had become a part of the general property of -the State.
It will not do then to say in the case at bar that the soapine in the hands of the relator in the broken box, or package, any more than in the unbroken box has become a part of the mass of the general property of the District-
In Robbins vs. Shelby Taxing District, it is held as within the power of the State among other things, “ the imposition of taxes upon persons residing within the State or belonging to its population, and upon avocations pursued therein not directly connected with foreign or interstate commerce * * * the imposition of taxes upon all property within the State mingled with and forming part of the great mass of property therein. But in making such intern'al regulations a State cannot impose taxes upon persons passing through the state, or coming into it merely for a temporary purpose especially if connected with interstate or foreign commerce, nor can it-impose such taxes upon property imported into the State from abroad, or from another State and not yet become a part of the common mass of property therein.”
Is it reasonable to hold that a non-resident manufacturer* coming into this District for the mere temporary purpose of exercising the privilege of sale of his goods under the free *369 dom of interstate commerce, is only protected from local taxation so long as Ins goods remain in the unbroken package in which he has imported them? If his free right to sell is limited to a sale in unbroken packages, the limitation amounts to a denial of the privilege because all exhibition and inspection are prohibited, inasmuch as the opening or breaking of the package for any purpose subjects the seller to the requirement of the license tax.
The clause of the Constitution under consideration includes commerce with the Indian tribes as under the regulation of Congress. Imagine an Indian trader from one of the tribes coming into a State with a bale of skins and furs, and being informed that under a municipal ordinance similar to this, he was free to sell the whole mass, unopened, with package unbroken, but if he opened or exposed them his goods became part of the mass of goods in the State and he was subject to taxation. It would not be tolerated — it ■would be too plain a violation of that clause of the Constitution. Is it not absurd to hold that an agent may sell without license by sample — but that he may not sell the sample ?
It múst be, that in this case, the non-resident manufacturer bringing his goods into the District-for the temporary purpose of sale, and retaining them in his actual possession, custody and control, such goods do not become part of the mass of goods in the District of Columbia, until he parts with them by sale, or otherwise changes their status.
It is beyond dispute that it is the free right of the Kendall Manufacturing Company to import its goods into the District of Columbia, because it is a right'of interstate commerce (Stoutenburgh vs. Hennick, 129 U. S., 142,) and Congress has not exercised its constitutional right of trammeling it with any regulations.
In Brown vs. Maryland, the court says: “Commerce is intercourse. One of its most ordinary ingredients is traffic. It is inconceivable that the power to authorize this- traffic^ *370 when given in the most comprehensive terms with the intent that its efficacy should be complete should cease at the point when,its continuance is indispensible to its value. Sale is the object of importation, and is an essential ingredient of that intercourse of which importation constitutes a part. It is as essential an ingredient, as indispensible to to the existence of the entire thing, then, as the importation itself. It must be considered as a component part of the power to regulate commerce.”
Any penalty inflicted on the importer for selling the thing in his character of importer, must be in opposition to that freedom of interstate commerce which must exist until Congress under its constitutional power imposes some restrictions. The absence of such regulation means that interstate commerce is free.
In Leisy vs. Hardin, 135 U. S. App., 124, the court says, with reference to beer imported into the State of Iowa from the State of Illinois, and held for sale by the agent of the manufacturers in Iowa, in the original packages in which it was imported, that notwithstanding a prohibitory statute, “they had the right to import this beer into that State, and in the view which we have expressed they had the right to sell it, by which act alone it would become mingled in the common mass of property within the State. Up to that point of time we hold that in the absence of Congressional permission to do so, the State had no power to interfere by seizure, or any other action in prohibition of importation and sale by the foreign or non-resident importer.”
The Supreme Court of the United States has been careful in construing the provisions of the Constitution restricting the powers .of the States in their general right of taxation, to limit the decision to the actual case before it, anxious not to interfere with the jealously guarded rights of the States.
It has been held to be regulations of interstate commerce.
*371 A statute laying a tax upon non-resident drummers offering for sale, or selling goods, wares or merchandise by sample manufactured or belonging to citizens of other States. Robbins vs. Shelby Taxing District; 120 U. S., 489.
Also a statute requiring a license of itinerant dealers in goods, wares and merchandise, not the growth or produce or manufacture of the State. Welton vs. Missouri, 91 U. S., 275.
Also an act of the Legislative Assembly, District of Columbia, imposing a tax upon “commercial agents,” defining them as “ every person whose business it is, as agent, to offer for sale goods, wares, or merchandise by sample, catalogue, of otherwise,” as applied to the case of an agent for a nonresident firm, selling by sample. Stoutenburgh vs. Hennick, 129 U. S., 141.
The question in this case is now for the first time presented here. It has not been before the Supreme Court of the United States in any case reported. It demands a new departure, the drawing of a new line of demarkation back of which the State cannot step for the purpose of taxation,' and that line, in my judgment, in this case is the line of sale by the non-resident importer, temporarily in the District for that purpose, of the goods by him imported, whether in unbroken or broken packages.
The case of Stoutenburgh vs. Hennick, settles the question that the act in question is not a regulation of Congress. The relator should be discharged.