SWIFT et al. v. PHILADELPHIA & R. R. CO. SAME v. CENTRAL VT. R. CO. SAME v. DELAWARE, L. & W. R. CO. SAME v. FITCH. BURG R. CO. SAME v. NEW YORK, C. & ST. L. R. CO.[1]

(Circuit Court, N. D. Illinois. November 27, 1893.)

1. CARRIERS OF GOODS — UNREASONABLE CHARGES — INTERSTATE COMMERCE— COMMON LAW.
The common-law rule forbidding common carriers from exacting unreasonable charges does not apply to interstate commerce, even when the contract of carriage is made in a state where that rule prevails, since such commerce is governed solely by the laws of the United States, and the United States have never adopted the common law.

2. REMOVAL OF CAUSES—JURISDICTION—INTERSTATE COMMERCE ACT.
Federal courts have no jurisdiction, in suits removed from state courts on the ground of diverse citizenship, to enforce the provisions of the interstate commerce act, since in removed cases the jurisdiction of the federal courts is no wider than that of the courts in which the cases were begun.

At Law. On demurrer to declarations. Demurrers sustained.

E. Walker, Albert H. Veeder, and Mason B. Loomis, for complainants in all the cases.

John G. Milburn, S. E. Williamson, and Gregory, Booth & Harlan, for defendants Fitchburg R. Co., New York, C. & St. L. R. Co., and the Delaware, L. & W. R. Co.

Ullman & Hacker and Osborn & Lynde, for defendant Philadelphia & R. R. Co.

Schuyler & Kremer, for defendant Central Vt. R. Co.

GROSSCUP, District Judge. The declarations in these cases are substantially alike. The first three counts, with some variations, aver that the plaintiff is a corporation engaged in the business of shipping dressed beef and other provisions from the Union Stock Yards, in Chicago, to New York, Montreal, and other points in the eastern states and Canada; that after the 4th day of April, 1887, (the date the interstate commerce law went into effect,) and until April, 1888, the plaintiff, from time to time, delivered and the defendant accepted for transportation to such terminal points certain of its manufactured products; that the defendants were common carriers, engaged with other common carriers, in transporting continuously from Chicago to the eastern terminal points at certain rates established and then in force as the rate between such points; that the plaintiff was compelled to pay these defendants, according to the schedule rates, the sum of 65 cents per 100 pounds from Chicago to New York or Boston, and other rates in like proportion to other points; and that the rates so taken and exacted were

---

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

unjust and unreasonable. Two of these counts allege that these rates were established by combination between defendant and other corporations, and that the plaintiff paid the same under protest. The other special counts, except the fifth and seventh, are substantially the same, except that they aver that the defendants, and the other common carriers engaged with them in transporting the goods, used bills of lading for such shipments in the name and style of the Great Eastern Fast Freight Line, or other fast freight lines. The fifth and seventh counts are substantially the same as the others, except that they proceed expressly under the interstate commerce act. Most of the defendants demurred to all of the special counts, one of them, the Delaware, Lackawanna & Western Railroad Company, in place of a demurrer, filed a plea to the jurisdiction to the fifth and seventh counts. The cases are removed here, on the petition of the defendants, from the state courts, on the ground of diverse citizenship.

The general question raised by the demurrer is whether there is any law, common or statutory, applicable to the transactions set forth, which prohibits the exaction of unreasonable rates, or affects any contract between the shipper and carriers whereby unreasonable rates are stipulated for and taken. There can be no question that, in the absence of such prohibition or restraint, a common carrier can lawfully demand or contract for such compensation for carriage as he may be able to obtain. His privileges would, in such cases, be like those of any other person, and subject only to the economic laws which flow from trade and competition. If there is any municipal law which supersedes or supplements these economic laws, and subjects the carrier to restraints or regulations not imposed upon general business, it must be found either in the municipal law of the states or in a law of the United States.

It is not disputed that within the territory of the states, and upon subjects affected by state law, such a prohibition exists. It is one of the restraints embodied in the common law of England, and is therefore in force within every jurisdiction where the common law is the law of the land. It seems to me equally clear that, outside of the interstate commerce act, there is no law of the United States, as a distinct sovereignty, imposing such restraint. The United States, as a distinct sovereignty, imposes no laws upon its subjects, except such as are expressly or impliedly enacted by congress. Congress has not adopted the common law of England as a national municipal law. The courts of the United States have had many occasions to enforce the common law, but in every instance it has been as the municipal law of the state by which the subject-matter was affected. Outside of the interstate commerce act, there is no enactment of congress, and no self operating provision of the federal constitution, which expressly or by implication evidences a command or purpose to interfere with the freedom of interstate commerce, or lay any restraint upon the rights of carriers or shippers engaged therein. Welton v. State of Missouri, 91 U. S. 282; Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091.

The question then arises, is the municipal law of the state applicable to the transactions set forth in the declaration? Is the act or contract of a carrier, who accepts goods for carriage from one state into another, subject to that particular provision of the municipal law of the several states where the goods are taken, or through which they are conveyed, which prohibits the exaction of unreasonable rates? There can be no doubt that to congress is given, by the constitution, the absolute power to regulate commerce between the states. This power, independently of legislation, is not necessarily exclusive of the right of the states to reasonably regulate such incidents of interstate commerce, lying within their respective jurisdictions, as wharves, pilots, harbors, roads, bridges, etc. A wharf, harbor, or bridge lying within a state is a tangible entity, over which the laws of the state extend. The cost of their creation and the expenses of their maintenance make the imposition of tolls or charges not only reasonable, but necessary. These must be enforced by and subject to some law, and, in the absence of congressional legislation, there is no law except that of the state. The application of state law in such cases is not inconsistent with the general power conferred upon congress, and does not introduce into commerce between the states either confusion or restraint. Such regulations may exist harmoniously with regulations imposed by other states upon wharves, harbors, and bridges within their territorial limits. But the fixing of a rate for the carriage of goods from one state to another is not simply an incident of, or appurtenance to, commerce, but is the very core and essence of interstate commerce. It is not a physical entity within the limits of a state, and it cannot be subject to regulation in one state without coming into interference with the equally rightful regulations of other states, and thus producing hopeless contradiction and confusion. How can Illinois determine what is a reasonable charge for carriage across Indiana, Ohio, or Pennsylvania? The reasonableness of such rate depends, among other things, upon the cost of construction and wages paid beyond her jurisdiction; the amount of capitalization allowed, and taxes and assessments exacted, by other jurisdictions; the terms of contracts for the interchange of freight between carriers, made and allowed under the laws of other states; and the amount of traffic carried, which may, in turn, be affected by the laws of the other states governing the acquisition of, or consolidation with, other lines. These, and many others, are the elements of the cost of carriage, and, before the reasonableness of a rate can be determined, the cost must be ascertained. The reasonableness of rates for such long distances, and over different methods of conveyance, can only be approximately ascertained, at best, by men of special learning and equipment in such matters. Is it possible that the constitution contemplates that such learning can be found in the courts and juries of every county traversed by a line 1,000 miles long? I am of the opinion that a rate for the carriage of interstate commerce, dependent, as it is, for its reasonableness upon so many different considerations of expenditure, business,

and interpretations of the laws of different states, is essentially a national affair, and its regulation is therefore exclusively national. The rate of carriage is the heart pulse of commerce, and can be subject safely to a single source of restraint only. Many restraints, themselves entirely different and inconsistent with each other, would destroy the very possibility of uniformity or fixedness of rates. It follows, therefore, that in my opinion the local municipal law of the several states is not applicable to the reasonableness of these rates, and cannot be appealed to as a basis for suits such as these.

It is urged on argument that, inasmuch as the contracts for shipment were made in Illinois, the law of Illinois necessarily entered into their constitution and terms; that a contract could not be made which contravened the municipal law of the state. The counts of the declaration which proceed upon contract assume that the rate charged was agreed upon between the parties. Now the law of Illinois does not introduce a new term into this contract. Its utmost effect would be to forbid a contract for an unreasonable rate, and therefore make the supposed contract unlawful. But the effect of this would be simply to abrogate the contract, and leave the transaction open to such adjustment as the application of the proper laws allowed. That law, as has already been pointed out, cannot be found in the jurisdiction of the states, but only in the body of the laws of the United States.

Those counts of the declaration which proceed directly upon the interstate commerce act cannot be sustained in these suits. The courts of the United States, upon removed cases, have no wider jurisdiction than have the courts of the state from which they were removed. The removal simply transfers the hearing from the state to the national tribunal, but does not enlarge the right of the court to hear the cause. The right to question the reasonableness of an interstate commerce rate is a matter of primary, as well as of exclusive, jurisdiction in the federal courts. It does not reside in the jurisdiction of the state courts, or of the federal courts, acquired by the fact of diverse citizenship.

For the reasons above stated, the demurrers are sustained, and the several counsel will prepare their orders accordingly.