BüRKET, C. J.
The arrest was based upon the act of May 19, 1894, 91 Ohio Laws 346, the first section of which is as follows:
Section 1 — “Be it enacted by the general assembly of the state of Ohio, that it shall be unlawful for any person, persons or corporations to expose for sale within the state of Ohio, without first obtaining from the secretary of state, a license to sell any convict-made goods, merchandise or wares, as hereinafter provided.”
By the subsequent sections of the act, a party desiring to deal in convict-made goods is required to obtain a license from the secretary of the state, at a cost of five hundred dollars ($500), per annum, which must be posted up in his place of business, to give bond with two good sureties in the sum of five thousand dollars, ($5,000), to make an annual report of his purchases and sales, stating prices of purchase and giving names, residences and street numbers of all purchasers. But the act provides that it shall not affect products of' the prisons of this state. The penalty for a violation of the act is a fine not exceeding one thousand dollars, ($1,000,) nor less than five dollars or imprisonment not exceeding one year, nor less than ten days, or both fine and imprisonment at the discretion of the court; one-half of the fine to go *419 to the commissioner of labor statistics to aid in such pi'osecutions.
It is urged by counsel for defendant in error, that the act is in conflict with that part of section 8, of article 1 of the constitution of the United States, which provides as follows:
Section 8 — “The congress shall have power * * to regulate commerce * * * among the several states * * *.”
Counsel for plaintiff in error claims that convict-made goods do not come within the meaning of “commerce,” as that word is used in the above section, and that the state has the right to protect its own citizens, laborers and markets against an invasion of convict-made goods.
This leads to an inquiry as to the meaning of the word “commerce,” as used in the constitution of the United States. The proper construction to be placed upon the word as applied to different transactions, has often been before the supreme court of the United States, which court alone has power to declare, finally, its legal meaning.
In the case of Kidd v. Pearson, 128, U. S., 1, it is said that the buying and selling, and the transportation incidental thereto, constitutes commerce. And in County of Mobile v. Kimball, 102 U. S., 691, 702, commerce is defined as follows:
“Commerce with foreign countries and among the states, strictly considered, consists in intercourse and traffic, including in these terms navigation, and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities.”
It is not competent for a state legislature to declare that convict made goods are not articles of traffic and commerce, and then to act upon such *420 declaration, and discriminate against such goods, or exclude them from the state by unfriendly legislation. Whatever congress, either by silence or by statute, recognizes as an article of traffic and commerce, must be so received and treated by the several states.
There is no act of congress declaring that convict-made goods are not fit for traffic and • commerce, and it therefore follows that such goods are the subject of commerce, and when transported from one state to another for sale or exchange, become articles of inter-state commerce, and entitled to be protected as such ; and any discrimination against such goods in the state where offered for sale is unconstitutional.
That convict-made goods are articles of traffic and commerce, is not only shown by the failure of congress to legislate on the subject, but is conceded by the act in question; because after taking out and paying for his license, no restraint is laid upon the dealer, but he is left free to buy and sell as he pleases, only so that he reports his purchases and sales annually, to the end that the public may know who purchase and use such goods, and if need be boycott them for so doing. The act therefore, by its terms, concedes that such goods are articles of traffic and commerce.
It is well settled that in legal effect the money paid for a license to sell goods, is a tax upon such goods. Brown v. Maryland, 12 Wheat. 419; Welton v. Missouri, 91 U. S., 275; Leloup v. Mobile, 127 U. S., 640.
As the act in question provides that it shall not affect products of the prisons of this state, the license fee of five hundred dollars, ($500,) is a tax or duty imposed by this act upon such goods when *421 imported from another state, and is clearly a regulation of commerce among- the states, and an attempt to exercise a power which belongs to congress alone. The act is therefore clearly unconstitutional.;
The mere silence of congress is not sufficient to authorize a state legislature to legislate upon a subject vested by the constitution in congress, but such silence is to be regarded as evincing the in. tention of congress that the power shall remain where the constitution has placed it.
To give a state legislature power to legislate in such eases, requires an act of congress to that effect. Leisy v. Hardin, 135 U. S., 100; Welton v. Missouri, 91 U. S., 275.
The police power is reserved to the states, and they have the right to regulate internal trade, so as to protect the health and public welfare of the people, but this power cannot be so extended as to encroach upon inter-state commerce; and whether any particular act does so encroach or not, is a question for the courts, and in the determination of that question, the supreme court of the United States refuses to be bound by the opinion of the state legislatures, or the state courts. If the act is in its effect an encroachment upon interstate commerce, though expressed to be a regulation under the state police power, the federal courts hold it unconstitutional. Leisy v. Hardin, supra, Minnesota v. Barber, 136 U. S., 313.
The act in question is not a police regulation, but an attempt to prevent, or at least discourage, the importation of convict-made goods from other states, and thereby protect our citizens, laborers and markets against such goods. But if we are in a condition to require such protection, the appeal *422 for relief must be made to congress, which body-alone has the power to legally grant such relief.
In re Rahrer, Petitioner, 140 U. S., 545.
In holding the act in question to be in conflict with the constitution, we obey that instrument and follow a long line of decisions of the supreme court of the United States. Brennan v. Titusville, 153 U. S., 289, and cases there cited.

Judgment affirmed.