Mr. Gaylon E. Carter, President Arkansas State Board of Chiropractic Examiners 2020 West Third Street, Suite 1C Little Rock, AR 72205
Dear Mr. Carter:
This is in response to your request for an opinion on whether the Arkansas State Board of Chiropractic Examiners ("the board") may require through their rules and regulations that any doctor of chiropractic licensed in the State of Arkansas must receive at least twelve of the twenty-four hours of continuing education in the State of Arkansas.
For the reasons that follow, and based upon the information supplied, it is my opinion that such a regulation would likely violate the Interstate Commerce Clause of the United States Constitution.
A regulation requiring chiropractors to receive at least half of their continuing education hours within the state would discriminate against out-of-state providers of chiropractic continuing education. It would constitute a direct burden on interstate commerce. The contours of the Commerce Clause are discussed in Philadelphia v. New Jersey, 437 U.S. 617 (1978), and Pike v. Bruce Church, Inc. 397 U.S. 137 (1970), as follows: The opinions of the Court through the years have reflected an alertness to the evils of `economic isolation' and protectionism, while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected. (Citations omitted.) The clearest example of such legislation is a law that overtly blocks the flow of interstate commerce at a State's borders. Cf. Welton v. Missouri, 91 U.S. 275, 23 L.Ed. 347. But where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted a much more flexible approach, the general contours of which were outlined in Pike v. Bruce Church, Inc. 397 U.S. 137,142, 25 L.Ed.2d 174, 90 S.Ct. 844.
Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
437 U.S. at 623, 624.
Additionally, as recently as 1989, the Ninth Circuit Court of Appeals has set out the applicable test:
 A state statute triggers scrutiny under the commerce clause in either of two situations: (1) when the statute `affirmatively discriminates,' either on its face or in practical effect, against transactions in interstate commerce, or (2) when the statute regulates evenhandedly but incidentally burdens interstate transactions. Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). Statutes of the first type are subject to demanding scrutiny and will be upheld only if the state demonstrates "both that the statute `serves a ligitimate [legitimate] local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." Id. (quoting Hughes, 441 U.S. at 336, 99 S.Ct. at 1736). Statutes of the second type, on the other hand, will be upheld unless `the burdens they impose on interstate trade are clearly excessive in relation to the putative local benefits,' Id. (quoting Pike v. Bruce Church, Inc.)
Hass v. Oregon State Bar, 883 F.2d 1453 (9th Cir. 1989) at 1462.
The language of the U.S. Supreme Court above discusses the legitimacy of the local interest to be protected, and the extent of the burden on interstate commerce. We have already concluded herein that the proposed regulation imposes a direct burden on interstate commerce. Out-of-state providers of chiropractic continuing education will not be allowed to engage in the amount of interstate commerce involving Arkansas chiropractors that they engaged in prior to the regulation. The regulation on its face would discriminate against out-of-state providers. This being the case, the regulation must serve a "legitimate local purpose" and it must be demonstrated that this purpose could not be served as well by available nondiscriminatory means. It is my opinion that the proposed regulation does not even meet the first leg of this test.
We are, in this instance, at a loss to determine a legitimate local interest which would be protected by requiring chiropractors to receive at least half of their continuing education within the state. Is there some evidence that the educational programs conducted within the state are more informative or of a better quality than the out-of-state programs? Are there aspects of chiropractic practice in Arkansas peculiar to this state, such that Arkansas chiropractors would receive training in the Arkansas programs which they could not receive in out-of-state programs? Does the subject of the practice of chiropractic (the spine, and other body structures) differ markedly from state to state? We have not been presented with any evidence in support of these factors.
It may be, then, that the interest to be protected by the proposed rule is an economic one. If, by adoption of the regulation, the board seeks to benefit the relative economic position or financial success of the in-state program as opposed to, or at the expense of, the out-of-state programs, it is my opinion that this objective does not form the basis of a "legitimate local purpose." Absent any evidence of a "legitimate" local interest to be protected, it is my opinion that the proposed regulation would constitute mere "economic protectionism" which is subject to a virtual "per se rule of invalidity." Philadelphia v. New Jersey, supra.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.