## Union Cotton· Oil Co. *v.* Patterson.

[77 South. 795, Division B.]

Commerce. *Sales. Interstate transactions. Code 1906, section 935.*
 Where the agent of an Alabama corporation purchased cotton seed "F. O. B. Como, Miss., mill weights to 'govern," for shipment to Alabama, where the mill was located and where the contract was required to be approved, it was not a Mississippi contract but an interstate transaction, and on failure to deliver the seed, the corporation could sue and recover for breach of contract in Mississippi although it had not filed its charter and paid the fee required under section 935, Code 1906.

Appeal from the circuit court of Panola county.
Hon. E. D. Dinkins, Judge.
Suit by the Union Cotton Oil Company against A. M. Patterson. Judgment on peremptory instruction for defendant, and plaintiff appeals.
 The facts are fully stated in the opinion of the court.

*L. F. Rainwater,* for appellant.

 I respectfully submit that there are two questions involved in this case, the correct answer to either one of which, is sufficient to reverse the holding of the trial court, viz: First, was appellant doing business in Mississippi within the purview of our statute? Second, if it can be said that the act of appellant in contracting for the purchase of cotton seed from appellee constituted a doing business in this state, was such business interstate commerce, and not subject to regulation or restriction by the statute?
 First, as to doing business: The undisputed proof is that appellant had a mill in Birmingham, Alabama, and at no other place. The business was the conversion of cotton seed into oil, cakes, hulls and linters, and (incidentally, and necessarily) the purchase of cotton

seed for that purpose. The purchase of cotton seed was not the business of the corporation, but only an incident to its business. The purchase of agricultural implements is not the business of farming, but incidental and necessary to the conduct of the business of farming. The purchase of law books is not the business of praticing law, but a very necessary incident to the business of a lawyer. Appellant did not purchase cotton seed for the purpose of resale but, solely for the purpose of converting them into oil, meal, etc.

I maintain that in order for a foreign corporation to be amenable to requirements of our statute as to filing, etc., must be engaged in the prosecution of its principal business, and that an occasional transaction which is merely incidental to its principal business is not meant. "The foreign corporation must transact within the state some substantial part of its ordinary business, through an agent appointed for that purpose." Am. & Eng. Ency. Law (1 Ed.), p. 348; *United States* v. *Am. Bell Tel. Co.,* 29 Fed. 17.

"Occasional purchases at St. Louis, either by correspondence, or occasional sending of an agent for the purpose, did not make the foreign corporation to be doing business in Missouri. *St. Louis Wire Mill Co.,* v. *Consolidated Barb Wire Co.,* 32 Fed. 802.

"The doing of a single act of business, such as con-. tracting in one state to sell and deliver there, machinery, to be manufactured in the home state, with no purpose to do any other business, or to have a place of business, does not constitute doing business within such state. " 8 Am. & Eng. Ency. Law (1 Ed.), p. 346; 8 Am. & Eng. Corp. Cases, 178, 113 U. S. 127.

On pages 347-8 in 8 Am. & Eng. Ency. Law, in reference to what does not constitute doing business, the text enumerates several things among which is the following: "The making of occasional purchases either

by correspondence or the sending of an agent for that purpose."

Isolated transaction—General rule. The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another state, are not a doing or carrying on of business by the foreign corporation within the state of the latter, even according to the weight of authority, when the transaction is of such a character as to constitute a part of the ordinary business of the corporation. 19 Cyc., p. 1268, citing numerous authorities from Alabama, Arkansas, Colorada, Illinois, Indian Territory, Iowa, Kansas, Missouri, New Jersey, New York, Oregon and Pennsylvania, Tennessee, Texas, Washington, Wisconsin, and United States. These authorities seem to be conclusive of the question under discussion.

In Haring's Corporate Interstate Commerce, published in 1917, section 593, it is said: "The mere making of a contract in the state of New York is not doing business within the state so as to preclude a foreign corporation which has not complied with New York law from bringing suit upon such contract in that state," and in section 594 the same author says: "A foreign corporation which has no capital employed nor goods stored nor branch office within the state of New York, although soliciting and taking orders there by traveling salesmen, is not doing business within the state, so as to require compliance with the New York corporation laws before an action can be maintained."

To the same effect is the case of *Saxony Mills* v. *Wagner et al.*, 94 Miss. 233. Appellee relied for his defense upon the case of *Music Co.* v. *Haygood,* 108 Miss. 764. There is a very wide difference between the facts of the case at bar and the case cited, *supra.* In the case cited the Music Company, a foreign corporation, who was plaintiff, had and maintained a store or office

in Tupelo, Mississippi; had a resident agent there who sold and delivered goods replenishing his stock from time to time, and was clearly doing business in this state. There is no similarity in the two cases. In the case at bar appellant sent its employee out to purchase cotton seed for the purpose of having them shipped to its mill in Birmingham to be converted into oil, meal, linter, etc., this employee not being a resident of this state and having no office or place of business and remaining only a few hours. Any purchase of seed made by him was subject to ratification at the home office, and in the instant case was so ratified. I call attention of the court to the case of *Standard Pattern Co.* v. *Cummins,* 187 Mich. 196.

If it can be said that the facts of this case constitutes doing business in Mississippi, within the purview of our statute, then was the transaction one of interstate commerce and not subject to regulation or restriction by our statute? What is interstate commerce? Justice FIELD in the case of *Mobile County* v. *Kimball,* 102 U. S. 691, 26 Law Ed. 238, says: "Commerce with foreign countries and among the states, strictly considered, consists in intercourse and traffic and the transportation and transit of persons and property, as well as the purchase, sale and exchange of commodities." "Action upon by separate states is not therefore permissible."

Again in *Bloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 204, it is said: "Commerce among the states consists of intercourse and traffic between their citizens and includes the transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale and exchange of commodities. The power to prescribe the rules by which it shall be governed—that is, the conditions upon which it shall be conducted is vested in Congress. The power also embraces within its control all the instrumentali-

ties by which that commerce may be carried on and the means by which it may be aided and encouraged.''

Mr. Pomeroy in his work on constitutional law defining interstate commerce says: ''It includes the fact of intercourse and traffic and the subject-matter of intercourse and traffic. The fact of intercourse and traffic again embraces all the means, instruments and places in which intercourse and traffic are carried on. The subject-matter of intercourse or traffic may be either things, goods, chattels, merchandise or persons.''

In view of the foregoing definitions I presume it will not be contended that the purchase of cotton seed from appellee by appellant, was not a transaction of interstate commerce, if the purpose and understanding was that the seed were to be delivered on board the cars for the purpose of transportation to Birmingham, Alabama. While the memorandum of the contract does not specifically state that the seed were to be transported to Alabama, it is clear that it was the purpose and so understood by both parties that they were to be transported.

It is not necessary in the contract of sale that it should be specifically stated that the commodity is to be transported, but it may be inferred from the circumstances, the situation of the parties, the object of the sale and purchase, etc.

In *United States* v. *Tucker,* 188 Fed. 741, the court says: ''A sale the parties to which are in different states, when such sale necessarily involves the transportation of goods, is a transaction of interstate commerce.'' Haring, Corporate Interstate Commerce, p. 9. When goods are delivered to a common carrier for transportation from one state to another, they become the object of Interstate Commerce. Haring Corporate Interstate Commerce, sec. 10; *Coe.* v. *Errol,* 116 U. S. 517. So when the contract calls for delivery to a common carrier the same rule applies.

In *McNaughton Co.* v. *McGirl,* a Montana case, reported in 38 L. R. A. 367, the court reviews the authori-

ties at length upon the subject of interstate commerce, and I respectfully refer the court to that case and also to the case of *Standard Pattern Co.* v. *Cummins*, 187 Mich. 191.

In the latter case the court uses this language: So long as the business of the plaintiff, a foreign corporation was limited to the acts of interstate commerce, and did not establish a local agency, to represent it, it was not amenable to the laws of this state requiring foreign corporations, as a condition of transacting business in this state, to file a copy of their charter or articles of association as prescribed by the Michigan Act." Again the court says: "Was the plaintiff engaged in carrying on a local business?" and proceeds to answer that it was not.

This is the crucial test, and that which differentiates intrastate from interstate transactions. To be intrastate it must be a local business carried on by a local agency and must be the ordinary business of the corporation and not a mere incident to the business.

*F. H. Montgomery,* for appellee.

Can it be said that the coming into the state by this foreign corporation, and purchasing from the producers in the state, and bartering with the producers in the state, for their products on this immense scale, does not constitute "doing business" in the state? The inquiry answers itself.

Counsel for appellant undertakes to differentiate the case of *Quartet Music Company* v. *Haygood*, 108 Miss. 755, from the case at bar. It is difficult for me to see any distinction on principle between these cases. In the Quartet Music Company case the appellant had goods in Mississippi for sale, whereas in the case at bar the appellant came into Mississippi for the purpose of purchasing. The buying of goods constitutes a "doing

of business'' as effectually as the selling of goods, and if the selling of goods in the regular course of business in Mississippi constituted a ''doing of business'' within the meaning of section 935 of the Code of 1906, I can see no reason why the coming into the state and going into the open markets and purchasing between four and five thousand tons of cotton seed during a season does not likewise constitute a ''doing of business.'' So far as the magnitude of the business done is concerned, I apprehend that the amount invested in business by the Quartet Music Company was a mere picayune as compared with the amount invested by the Union Cotton Oil Company in this case.

I therefore confidently rely upon the decision of this court in *Quartet Music Company* v. *Haygood, supra,* as decisive of the first question raised by the appellant, namely, whether or not the Union Cotton Company was was doing business in Mississippi within the meaning of section 935 of the Code of 1906.

The case of *Standard Pattern Company* v. *Cummings,* 187 Mich., 196, 153 N. W. 814, L. R. A. 1916F., page 329, cited by counsel for appellant is no authority against the convention of the appellee in this case. The facts in that case are very different from every viewpoint from the facts in this case. I especially call the attention of the court to the very copious notes appended to the report of this decision as found in L. R. A. 1916F.

It is very clear that the contract sued on in this case was made while the appellant was acting in plain violation of section 935 of the Code of 1906, and being so made the courts of this state will refuse to render any aid to the enforcement thereof.

I now come to a discussion of the second proposition raised by counsel for appellant. Was it a matter involving interstate commerce? It seems that the contract sued on in this case is a sufficient answer to this contention of appellant. This contract appears on page

8 of the record.  By the terms of this contract the appellee was obligated to sell fifty tons of sound, dry, cotton seed to the appellant at forty-nine dollars per ton delivered at Como, Mississippi.  The contract so far as the appellee is concerned was to be entirely completed when he delivered to the appellant the fifty tons of cotton seed at Como, Mississippi.· Appellant contends that while the contract does not so state, it was the purpose of appellant to· have these seed, when so delivered to it at Como, transported by railroad to its mill at Birmingham, Alabama.  If this was the intention of the appellant it was a secret one not made known to the appellee, not consented to by the appellee, and not made a part of his contract; the transaction was to be a completed one upon the delivery of the cotton seed to the appellant at Como.  After appellee had made his delivery, the seed were entirely within the control of the appellant and the seed were then to be transported by railway to Birmingham, Alabama.  That was a pure matter of contract between the appellant and the railroad company not affecting in any degree the contractual rights of the appellee under the contract sued on.  It was a contract made in Mississippi and to be wholly performed in Mississippi and I cannot see how any question of interstate commerce can arise on this contract between the appellant and the appellee.

Counsel in his brief has quoted many excellent definitions by eminent courts and authorities of ''interstate commerce'' with none of which I have any fault to find.  But in my judgment these authorities are without application to the facts in this case.

There is nothing in the contract to indicate that any question of commerce is involved, either interstate or intrastate, and the suggestion that the seed when delivered were to be transported to Birmingham, Alabama, arises solely from explanation made by the appellant long after the entering into the contract and not participated in by the appellee.

If the act of the appellee in delivering the cotton seed to the railroad station under the contract in this case constituted an act of interstate commerce, then every farmer and planter who should bring a bale of cotton to the market and deliver it to the purchaser on the cotton platform at the railroad station, which is a general if not a universal custom, which the purchaser afterwards ships to a foreign state is likewise engaged in an act of interstate commerce and the legislature of the state would be without power to enact a statute governing the rights of the parties to such a transaction.

Likewise, every farmer or planter who sells his corn or grain or cotton seed to be delivered by him to the purchaser at the railroad station which was to be shipped by the purchaser to a foreign state would be engaged in an act of interstate commerce and the courts would be driven to the Constitution of the United States and the Acts of Congress to ascertain the contractual rights of the parties to every such transaction. Such a condition as this is unthinkable.

The contract in this case was made by parties in Mississippi and was to be completed in Mississippi and a delivery in Como to the railway station was a delivery to the appellant. There is nothing in the record from beginning to end which states any facts which by any construction could constitute an act of interstate commerce except the subsequent explanation of the appellant of his secret intention to transport these seed to Birmingham to be crushed at its mill. This was appellant's privilege but in no sense imposed any obligation upon the appellee. Contracts are construed according to their language and parties are not permitted to vary and add to the terms of their written contracts, especially after being involved in litigation.

So far as I can see, no authority cited by the appellant in this case holds that the fulfillment of the contract

sued on in this case constituted an act of interstate commerce.

The contract was made at Como, signed by the parties at Como and was to be completed at Como; no question of interstate commerce can be involved in such a contract.

Etheridge, J., delivered the opinion of the court.

A. M. Patterson & Co. and the Union Cotton Oil Company, a corporation under the laws of Alabama and domiciled at Birmingham, Alabama, entered into a contract on the 5th day of October, 1916, in the following words:

"Union Cotton Oil Company, Birmingham, Alabama. Bill of Sale. Como, Mississippi, 10/5/1916. We hereby sell to Union Cotton Oil Company fifty tons of sound dry cotton seed, to be shipped on or before October 25th, 1916, at price of forty-nine dollars per ton f. o. b. cars at Como, Mississippi, mill weights to govern in settlement. A. M. Patterson & Co., by A. M. Patterson.

"Accepted: Union Cotton Oil Company, by J. II. Hendon."

Patterson & Co. failed to deliver the seed called for in this contract, and the Union Cotton Oil Company went into the market and purchased the seed at an advanced price, the price of seed having gone up considerably between the date of the purchase under the above contract and the date on which the cotton seed were purchased in December by the Cotton Oil Company, the damage according to the declaration amounting to seven hundred dollars. The defendant pleaded the general issue, and pleaded specially that plaintiff could not enforce his contract because it was a nonresident corporation, and that its charter had not been filed with the secretary of state and the filing fee required paid to the secretary of state under section 935 of the Code of 1906. It also gave notice under the general issue that he received a letter from the plaintiff dated

October 9, 1916, in which plaintiff wrote the defendant that it would be all right to delay shipping the seed contracted for for several days, as plaintiff was crowded for room and could use the seed a little later, and that on October 13th the defendant wrote the plaintiff that he was also crowded for room, and he already had the seed contracted for, and unless he was permitted to ship during the week, he would be forced to sell the seed to some one who could receive them at once, and that he never received any reply or further instruction from the plaintiff, and treated the silence of the plaintiff as a refusal to accept the seed, and sold the seed to another party. The plaintiff's proof showed that it was a corporation domiciled at Birmingham, Alabama, created under the laws thereof, and that it had never filed its charter in the state of Mississippi, and that the only way that it did any business in Mississippi was to send a traveling representative, who bought seed from seed dealers to be shipped to Birmingham, and that it required the consent and affirmance of the corporation at Birmingham to make a sale to it, as the salesman had no power to complete a contract; that it had no local agency or office in the state of Mississippi, and it had no plant and did no crushing in the state of Mississippi. It also showed that the plaintiff never received this letter above referred to. Upon this evidence the court below granted a peremptory instruction against the plaintiff. The record shows that the circuit judge granted the peremptory instruction upon the theory that the above contract constituted a Mississippi contract, and that the failure to file the charter made such contract illegal and unenforceable in the courts of this state. We are unable to agree with the circuit judge in this contention. The contract showed on its face that the plaintiff was doing business at Birmingham, Alabama, and that the fifty tons of cotton seed were to be shipped and were to be settled for by mill weights. While it is true they were to be paid for f. o. b. Como,

still that does not take it out of the class of interstate transactions. It merely devolved upon the plaintiff to pay in addition to the price stipulated for, whatever freight charges might accrue. The contract could not be completed until accepted by the corporation under the proof in this record; and, as the mill weights were to govern, it is manifest that the cotton seed had to be shipped to the mill in order that the weight should be determined. This shipment would necessarily be an interstate transaction. See *Saxony Mills* v. *Wagner*, 94 Miss. 233, 47 So. 899, 23 L. R. A. (N. S.) 834, 19 Ann. Cas. 199; *MacNaughton* Co. v. *McGirl*, 38 L. R. A. 367, note; *Standard Fashion Co.* v. *Cummings,* 187 Mich. 196, 153 N. W. 814, L. R. A. 1916F, 329, note, Ann. Cas. 1916E, 413.

Judgment of the court below is accordingly reversed, and the cause remanded.

*Reversed and remanded.*