HESSIG-ELLIS DRUG CO. *v.* WILKERSON ET AL.

[76 South. 570, In Banc.]

1. CORPORATIONS. *Failure to report organization. Liability as part-
ners. Statute.*

Notwithstanding a corporation on account of its defective organ-
ization in failing to report to the secretary of state in thirty
days after its organization is only a *de facto* corporation and
notwithstanding its right to do business as such is questionable
only by the state in a direct proceeding, this does not relieve
its stockholders from liability to its creditors under Code 1906,
section 930, providing that should such report be not made
within thirty days from the time of the organization, the char-
ter granted shall be null and void and all persons doing busi-
ness thereunder shall be deemed and held to be partners and
liable as such.

2. CORPORATIONS. *Failure to report organization. Liability of stock-
holders as partners. Statute. Doing business.*

Under Code 1906, section 930, providing that all persons doing
business under the charter of a corporation whose organization
is not reported to the secretary of state in thirty days after
its organization, shall be deemed to be partners and held liable
as such, the stockholders of such corporation including one
who bought his stock after the company had lost its right to
do business because of its failure to report the organization to
the secretary of state are liable to creditors since all did the
business of the corporation in contemplation of law as well as
its officers and agents.

APPEAL from the circuit court of Warren county.

HON. J. O. S. SANDERS, Special Judge.

Suit by Hessig-Ellis Drug Company against R. C. Wil-
kerson and others. From a judgment against plaintiff,
it appeals.

The facts are fully stated in the opinion of the court.

*J. C. Catchings*, for appellant.

The learned special judge, as shown by his opinion,
adopted the view expressed by the demurrer filed on be-

half of Mr. Wilkerson. The theory of that demurrer is that the purchase by Mr. Wilkerson of stock was no purchase of stock at all in fact, for the reason that there was no corporation in which stock could be held. So the conclusion of the demurrer is that Mr. Wilkerson really purchased nothing.

The learned Special Judge in his opinion states: "One who, after the charter has ceased to exist, by operation of law is induced to buy stock in the dead corporation, takes nothing by his purchase, nor does he, without doing anything more than that, render himself liable."

He limits the statute so that it places liability only upon "those who start out as the organizers and incorporators of the corporation who fail to report the organization."

The theory of the demurrer filed by Mr. O'Neil is entirely different. It concedes that Mr. O'Neil was a stockholder, but claims that he is not liable as a partner because he was an inactive stockholder, who did not participate in the organization of incorporation, or in the management or conduct of the business.

It would be entirely competent for persons to agree that a partnership should be formed between them, whose business should be managed and controlled by a president and directors just as in the case of a corporation. It would be entirely competent for them to agree that this partnership should issue shares just as a corporation issues shares representing the interest of each holder.

Such a partnership would have been a joint stock company, and a joint stock company can be created and organized under the laws of this state. 2 Cooke on Corporations, sec. 505; *Kosakowski* v. *People,* 177 Ill. 563; *Robbins* v. *Butler,* 24 Ill. 387. Now the persons doing business under that charter were those who held shares of stock which had been issued. It is not necessary in order to make the holders of the shares of the Marshall Drug Company liable as partners that they should have actually participated in the management of the affairs of the company as members of ordinary partnerships are

supposed to do. This is for the reason that they have agreed by the structure of the business that it shall be transacted by certain persons selected for that purpose. When this charter became void because of the failure to make report of it there was a partnership left, which was in the nature of a joint stock association.

If these purchasers took nothing, they would have had no standing in the court to have asserted the *status* of the business as a partnership and their interest in it represented proportionately by the shares of stock held by them. When the statute speaks of those persons doing business under a charter so becoming null and void, it means and can only mean persons holding shares of stock in such a corporation. It is not limited to those who actively attend the meetings and vote at the elections held for officers, directors, and so on, or who actively participate by advice and counsel in the management of the business.

Persons buying the stock of the Marshall Drug Company after it had lost its charter by the failure to report, must be deemed to have had notice of that fact. They are required to take notice when they are dealing with what purports to be a corporation to such an extent as to call for an inquiry on their part as to whether all conditions precedent have been performed, the failure of which would render the charter null and void. They must be conclusively held to have known that there had been a failure to make report. This being the case, the presumption is irresistible that they paid into the partnership knowing it to be a partnership, and intending that their interest should be manifested by shares of stock. In fact, so far as the matter of equity goes if that is to be considered at all, the purchaser of stock in the Marshall Drug Company after its organization, did not occupy so favorable an attitude as those who acquired stock at the time of its organization; for the reason that when they bought, the corporation had ceased to exist, and the very

slightest inquiry on their part would have advised them as to this.

*McLaurin & Arminstead,* for appellee.

The contention of R. C. Wilkerson is fairly set out, we think, in his demurrer, found on page 39. He simply contends that under section 230 of the Code of 1906, the corporation, the Marshall Drug Company, at the time he purchased, on the 2nd day of October, 1911, had by operation of law ceased to exist; that the charter was void, and that while all of the conditions obtained to make the concern after the thirty days were out, in which the organization could be reported to the secretary of state, a *de facto* corporation, yet when there was a failure to report within the thirty days, those doing business thereunder then became partners by virtue of said section. *Bank of Newton* v. *Simmons,* 49 So. 616. Section 930 specifically provides that should such report be not made within the time required, the charter granted shall be null and void, and it provides that all persons doing business thereunder shall be deemed and held to be partners in the business and liable as such. The declaration shows that the organization of the Marshall Drug Company occurred on August 29, 1911. They had thirty days thereafter to report the organization and failed. The result was that on the 29th day of September the charter previously granted was null and void and all persons doing business thereunder were made partners in the business and liable as such. Now, this sentence in this section certainly means all persons doing business thereunder on the 29th day of September, 1911, were made partners, and it certainly means that by law there was created an unlimited partnership, not a joint stock company. All joint stock companies may be partnerships.

It is of but little advantage to search for precedents in other states. Innumerable decisions as to the effect

on stockholders of defective organization of a corporation could be cited, but in each instance the result is controlled almost entirely by the language of the statute in the state where the corporation is sought to be organized. In other words we have not been able to find any statute in any other State exactly similar to section 930 of our Code. This section, however, has been construed by the supreme court of this state in the case of *Ragland* v. *Doolittle,* 100 Miss. 498. The case is not exactly parallel to the case at bar, because in the Ragland case it is shown that all of the defendants sought to be charged were of the original organizers.

Ordinarily a stockholder is not liable to a creditor where the creditor deals with the concern as a corporation simply because the corporation was defectively organized. All of the text books uphold this doctrine, and it is distinctly held in the case of *Gartside Coal Company* v. *Maxwell* by Mr. Justice BREWER, reported in 22 Federal Reporter 197, a general discussion of this question can be found by the court in 10 Cyc. under the chapter on Corporations —particularly near page 662. Also in Cook on Corporations (6 Ed.), chapter 13, page 627, et seq.

Appellant in his brief was driven to the position that the partnership created by operation of law was a joint stock company. This was necessary for the reason that there was no other way that appellant could contend that the purchaser of a certificate of stock would make the purchaser a member of the firm. But the difficulty about this is, it seems to us, Wilkerson never purchased a certificate of stock showing him to be a member of a joint stock company, in the first place, and in the second place, the effect, as we have stated, of the failure to properly organize the corporation is, after the thirty days are out, to create an unlimited partnership not a joint stock company.

We respectfully submit that the action of the lower court should be affirmed.

*Hudson & McKay,* for appellee.

The first ground of Frank E. O'Neil's demurrer is that "the declaration states no cause of action." Under this general ground we shall discuss and submit the proposition that the Marshall Drug Company was and is a *de facto* corporation and, as such, not subject to the collateral attack made by this proceeding on its corporated existence. The Marshall Drug Company is a *de facto* corporation. 1 Thomp. Cor. (2d Ed.), section 226, 157 Pa. St. 59.

But let us go further and determine whether the failure to report its organization to the secretary of state prevents the Marshall Drug Company from being a *de facto* corporation. And, preliminarily to this inquiry, we take it that it will be readily conceded to be shown by the declaration that the failure to report its organization was purely accidental, wholly unintentional, simply an oversight; because no bad faith therein is pleaded and no possible lack of good faith can be imagined for failing to do that which was simple and without expense or trouble and the very thing they most desired to do.

"The statutory requirements for the organization of corporations are generally regarded as conditions precedent to the formation of a corporation, and a substantial compliance is necessary in order to constitute a corporation *de jure.* But in the nature of the case, and under the definition given if some step in the progress of the organization is unintentionally omitted, and the other requirements are present there will be a corporation *de facto.* The accidental failure to comply with some legal requirement is one of the elements to the corporate existence *de facto;* otherwise it would be a corporation *de jure.*" 1 Thomp. Cor. (2d Ed.), sec. 234; *Mokelumne, etc., Min. Co. v. Woodbury,* 14 Cal. 424, 73 Am. Dec. 658; 32 Cal. 354; 84 Md. 320; 94 Tenn. 123; 22 Cal. 434; 13 Colo. 4; 85 Ky. 413; 88 Ky. 226; 62 N. H. 572; 4 Abb. N. C. (N. Y.) 444; 95 Mo. 106; 47 La. Ann. 1614; 30 Ore. 464.

The Marshall Drug Company being a *de facto* corporation, "it is thoroughly established by the great weight of authority that the existence of this class of corporations is not subject to collateral attack. 1 Thomp. Cor. (2 Ed.), sec. 252.

We shall next discuss the remaining six grounds of Frank E. O'Neil's demurrer under the general proposition: That Frank E. O'Neil was a mere, inactive stockholder; and the declaration fails to plead or set out any facts, showing that he was doing business under the alleged avoided charter so as to render him liable to appellant.

Section 930 provides as follows: "Should such report of organization be not made (to the secretary of state) within the time required (thirty days after organization), the charter granted shall be null and void, and all persons doing business thereunder shall be deemed and held to be partners in the business and liable as such." Now, in the light of the declaration, the all important words in the statute are "persons doing business thereunder." Under what circumstances can a person be said to be "doing business" under a charter? These do not appear to be technical words and must be given their common, ordinary meaning. At pages 1101 and 1102 of 9 C. J., the legal definition of the word "business" is given as "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." And Webster's dictionary is quoted as defining the word as "that which occupies the time, attention, and labor of men for the purpose of profit or improvement." *Ragland et al.* v. *Doolittle,* 100 Miss. 498.

We shall make no further reply to the brief for appellant than to observe that its argument is predicated of a merely supposed agreement among appellees and others to form a joint stock company. Such a supposition may serve to hang an argument on but it becomes wholly vain when it is but noted that there is in the record no pretense

of such an agreement in the case at bar.  Our statute does not make mere inactive stockholders liable.

"In some jurisdictions the doctrine that the adventurers of an attempted incorporation are liable as partners is denied on the ground that no such relation or liability was contemplated by them."  4 Thomp. Cor. (2 Ed.), sec. 4741; 4 Thomp. Cor. (2 Ed.), sec. 4745; 44 Cal. 440; 5 Colo. 282; 47 Conn. 443; 69 Ga. 156; 114 Mass. 476; 80 N. Y. 441; 22 Ore. 218; 29 Pac. 546; 29 Am. St. 596; 17 L. R. A. 549n; 1 Smith's Cas., 109.

If the persons who sign the articles of incorporation, and thereby directly participate in bringing the corporation into existence, are not liable as partners, then how can it be said that a mere, inactive stockholder could be held liable as such?  4 Thomp. Cor. (2 Ed.), sec. 4737; 91 Ala. 224; 8 So. 658, 24 Am. St. 887, 11 L. R. A. 515; 126 Cal. 541; 5 Colo. 282; 47 Conn. 443; 69 Ga. 159; 155 Ind. 60; 50 La. Ann. 3; 117 Mass. 476; 38 Mich. 779; 45 Neb. 176; 48 N. J. L. 599; 35 O. St. 158; 22 Ore. 218; 91 Ala. 224; 4 Thomp. Cor. (2 Ed.), sec. 4738.

We submit that the judgment of the lower court was eminently correct and should be affirmed.


SMITH, C. J., delivered the opinion of the court.


This suit was instituted by appellant to recover of appellees the price of certain goods, and merchandise sold by it to the Marshall Drug Company.  A demurrer interposed to the declaration by appellees was sustained, and, appellant declining to amend, judgment final against it was rendered.

It appears from the declaration that on the 21st of July, 1911, a charter was obtained from the state by certain designated persons for a proposed corporation to be known as the Marshall Drug Company, which corporation was on August 25th thereafter in all respects duly organized, except that it failed to comply with section 930, Code of 1906, which requires that "every corporation organ-

ized under this chapter shall, within thirty days after such' organization make report thereof to the secretary of state,'' etc., and further provides that ''should such report be not made within the time required, the charter granted shall be null and void, and all persons doing business thereunder shall be deemed and held to be partners in the business and liable as such.'' Upon the organization of the corporation one hundred and fifteen shares of its capital stock were purchased by appellee O'Neil, and on the 2d day of October, 1911, five of its shares of stock were purchased by appellee Wilkerson. The company engaged, as it was authorized by its charter so to do, in the drug business at Vicksburg, and so continued until November 12th, during which time it purchased from appellant the goods, wares, and merchandise, the price of which is here sought to be recovered, and during which time appellees continued to hold stock in the company. Having failed to collect the amount alleged to be due from the company, this suit was instituted against appellees for the recovery thereof under the provisions of the statute hereinbefore referred to.

Two propositions are relied upon by the appellees in support of the judgment of the court below: First, that, notwithstanding its defective organization, the Marshall Drug Company was and is a *de facto* corporation, and its right to do business as such can be called in question only by the state in a direct proceeding instituted for that purpose; second, the declaration shows on its face that appellees were neither the organizers of the Marshall Drug Company, nor were they officers, agents, or employees thereof, but, on the contrary, were mere inactive stockholders, and therefore were not doing business under its charter within the meaning of the statute. It is further contended for appellee Wilkerson that he never became a stockholder in the corporation and cannot be said to have been doing business under its charter, for the reason that his attempted purchase of stock therein occurred

more than thirty days after the corporation's organization, and, consequently, at a time when it had ceased to exist as such.

The first of these contentions, in so far as the liability *vel non* of appellees is concerned, is disposed of adversely to them by the express language of the statute.

We have been unable to discover any merit in the contention that the only persons who do business under the charter granted to a corporation are its officers and agents. The principal object sought to be accomplished by the creation of a corporation is that those persons who become stockholders therein may do business under the restricted liability imposed by its charter. The business in which a corporation is engaged belongs, in the last analysis, to its stockholders, who are entitled to receive all the net profits realized therefrom; the officers of the corporation being in reality only the agents of the stockholders for conducting the business.

It is true that, when appellee Wilkerson purchased his stock in the Marshall Drug Company, it had lost its right to do business as a corporation; but nevertheless he thereby acquired an interest in the business in which the company was engaged, and thereafter, with his associates therein, continued to conduct the same under the company's void charter, so that he comes within the express language of the statute and must be held liable.

*Reversed and remanded.*

SYKES, J. (dissenting). I cannot agree with the opinion of the majority of the court in this case. Section 930, Code of 1906, in part says:

"And all persons doing business thereunder shall be deemed and held to be partners in the business and liable as such."

My construction of this clause is that, before any one is liable under it as a partner, he must be actively engaged in the management of the business, and not a mere dormant, silent, or inactive stockholder, who has nothing

whatever to do with the active management of the business. If there were a board of directors in charge of this business, then, under the statute, they would be liable. If the stockholders had intrusted the management of the business to one or more of their number, then those stockholders in charge of said business would be liable. The declaration in this case does not charge that either of the defendants was engaged in operating the business of the drug company.

In my opinion, the judgment of the lower court should be affirmed.

HOLDEN, J.., concurs with me in these views.