Morrison *et al. v.* Guaranty Mortgage & Trust Co.

(In Banc. Dec. 9, 1940. Suggestion of Error Overruled March 10, 1941.)

[199 So. 110. No. 34243.]

209

Dugas Shands and Palmer Lipscomb, of Cleveland, and E. B. Taylor, of Shelby, for appellants.

Robert N. Somerville, of Cleveland, for appellee.

**Dugas Shands** and **Palmer Lipscomb**, for appellants, on suggestion of error.

**W. W. Venable,** of Clarksdale, and **Robert N. Somer-ville,** for appellee, on suggestion of error.

Argued orally by **Dugas Shands**, for appellants, and by **Robert N. Somerville**, for appellee.

**Ethridge, J.**, delivered the opinion of the court.

The Guaranty Mortgage & Trust Company, plaintiff in the court below, sued Charles S. Morrison, John W. Thomas, Ellie P. Thomas and Ruth Thomas Morrison on a promissory note, payable to the Guaranty Bank & Trust Company, now the Guaranty Mortgage & Trust Company, at its office in Memphis, Tennessee, in instalments, beginning July 11, 1925, and annually thereafter until July 11, 1934, with interest and attorney's fees. This note was given as a commission to the appellee for procuring a loan of $22,000 from the Prudential Life Insurance Company for the makers of the note. There were also interest notes on the instalments, separate from the main note.

The defendants plead the general issue, and also a special plea to the Statute of Limitations of six years, and a plea of usury. There were replications to the pleas and an exhibit to the replication to the plea of the Statute of Limitations. A contract was made on the 2d day of April, 1931, which is said exhibit, in which the indebtedness had been extended. Thereafter the defendants, appellants here, by leave of court withdrew the pleas, and filed a plea in abatement of the suit, setting up that the plaintiff, appellee here, was a nonresident corporation, and had done business in the state of Mississippi without complying with the statutes of the state, sections 4140 and 4164, Code of 1930, requiring foreign corporations so doing to file a copy of their charters with the Secretary of State, and to appoint an agent in the state upon whom process might be served, so as to bind the said corporation.

The record is voluminous, and we cannot, within the limits of an opinion, set out the facts in detail; but it appears from the record that in 1923 and 1924 the Guaranty Bank & Trust Company was a corporation of the state of Tennessee, with its domicil and office in the city of Memphis; and that, among other things, it engaged in the business of procuring loans for borrowers from investors or money lenders, charging a commission therefor; and that it contracted with numbers of persons in Mississippi to forward to it applications for loans to be secured upon farm property in the state, and, if the loan is approved, also the abstract of title to the lands; loans being made especially in the Delta counties of Mississippi. The contract between appellee and these people, called local correspondents, stipulated that the latter were to solicit loans for farmers and others desiring to borrow money, to be forwarded to the Guaranty Bank & Trust Company, at Memphis, for approval; it was also stipulated that these local correspondents were the agents of the borrowers, and not of the Guaranty Bank & Trust Company.

Such local correspondents were not obligated to send to the appellee such applications for loans, nor was the appellee obligated to accept them; and the proof shows that the local correspondents also procured loans from other sources. If the application for a loan, sent to the appellee by the local person or corporation in Mississippi, with the security offered, was approved by appellee, the borrower was then required to furnish an abstract of title, to be approved by appellee's attorney in Memphis; and appraisers would be sent by the appellee to examine and value the property, making a report to the appellee, who, however, was not bound thereby. The abstracts and appraisement were to be passed upon by the officers or attorneys of the company in Memphis. When so approved, the appellees would then submit this application and the security to an investor, and procure the loan if the investor so desired. The appellee required the borrower to pay its commission for handling the loan at Memphis, or to execute notes payable to it at Memphis.

The local correspondent who procured the loan in the present case was a Mr. Wilkinson, of Shelby, Mississippi, who is now dead. That is, the appellants applied to Mr. Wilkinson to procure a loan for them, and through him made application to the appellee at Memphis, Tennessee, which application was accepted, and the note sued on was executed, payable in Memphis, Tennessee; and the appellee secured the loan from the Prudential Life Insurance Company.

The appellee also does a like business in several other states, being a considerable concern, originally capitalized at $500,000. Occasionally it would make loans from its own funds in Memphis, but usually procured the loans from financial connections, one of which was the Prudential Life Insurance Company, which made the loan involved in the present suit. The loan so secured was for the purpose of paying off an incumbrance upon the property of Mr. Thomas, husband of one of the appellants, and father of John W. Thomas, Ruth Thomas Morrison,

Charles S. Morrison being the husband of Ruth Thomas Morrison. In the contract with the Prudential Life Insurance Company, shown in the record, the appellee assumed important contractual relationship therewith, being practically the guarantor of the collection and payment of the money; but the appellee did not get a commission from the Prudential Life Insurance Company —that was paid by the borrower.

So far as the borrower and the appellee were concerned, the contract was a Tennessee contract. From the record it seems to have been the practice of the persons forwarding abstracts for loans to the appellee to hold themselves out as persons who had money to lend, or who could procure money for borrowers; and these local people sometimes inserted advertisements in newspapers to this effect. They were frequently known in their community as persons who could procure loans, and applied to as such by the borrowers. The appellee, when the loan was approved, and the commission paid or secured, would pay the local people a compensation which was included in the note taken from the borrower for that purpose, or included in the funds paid by the borrower to the appellee. The appellee also sent its inspectors to appraise property, paying them for such service.

In procuring their contractual arrangement with the Prudential Life Insurance Company, the appellee in the present case undertook to collect from the borrower, in case the borrower did not pay the instalments and interest to that company; but, as we construe the contract, it did not prescribe any method or local procedure to be pursued in the state of Mississippi. In other words, the contract between the appellee and the Prudential Life Insurance Company was highly favorable to the Insurance Company, but it was between them, and not between the appellants and the Insurance Company.

After the suit was filed, and also the plea in abatement, the appellants, through their attorney, filed interrogatories in the office of the clerk of the court, to be answered

by the appellee, practically calling for all the correspondence between appellee and the local people in Mississippi and other places, and for a vast amount of information throughout the entire period from 1923 to 1931. This would require an enormous amount of searching, investigating and writing. The first set contained twenty-four questions, and we cannot, of course, summarize all of these. But to show the nature and extent of the work that would be required, and the great difficulty of replying to them, we give the following:

Question 5 of the second series reads as follows: "Please examine the records in your possession, under your control, or (to) which you have access and state the total sums shown thereby to have been collected by you and the sums for which the Guaranty Bank & Trust Company and/or Guaranty Mortgage & Trust Company held notes for amounts which it earned as commission and expenses from its entire operation in procuring loans on real property for persons with whom it did business during the period of time commencing January 1st, 1923, to and including December 31st, 1931."

Question 8, second series, is as follows: "Please examine the records in your possession, under your control, or to which you have access, and as shown thereby, please state for the period commencing January 1st, 1923, to and including December 31st, 1931, the name, address and occupation of all persons in Mississippi who served or acted in the capacity of local correspondent or agent for the Guaranty Bank & Trust Company, and all or any part of whose services rendered to said bank was the taking of applications, requesting it to procure loans for the signers of said application. From the records aforesaid, please show the amount paid to each local correspondent upon each loan procured by you upon real property in Mississippi. Please state the amount paid to H. L. Wilkinson of Shelby, Mississippi, as commission on the loan involved in this law suit."

Question 11, second series, reads as follows: ''Please examine the records in your possession, under your control, or to which you have access, and as shown thereby state the number of acres of land situated in Mississippi which were inspected or examined by appraisers or inspectors acting for the Guaranty Bank & Trust Company during the period commencing January 1st, 1931, to and including December 31st, 1931, and give the name of the inspector or appraiser who inspected the various tracts in Bolivar county, Mississippi, which may be shown by said records to have been inspected or examined by such person.''

The answers to these respective interrogatories are as follows: ''About the year 1931, the company discontinued its farm loan business and has not done any farm loan business since that time but has confined its business entirely to city loan business. As stated in former answers, all files where loans were paid off became obsolete and all of these obsolete files, which have not been lost or destroyed or otherwise disposed of, have been piled up in the basement of the building now occupied by the company or in other out of the way storage places and are in such a state of disorder that it would be an impossible task to procure any accurate information of any kind from these files.''

In answer to interrogatory 8, above quoted, ''It would be impossible to state with any accuracy the names, addresses and occupation of all persons who submitted applications to the company for loans on behalf of borrowers and to state the amount paid to each correspondent on each loan made in Mississippi between January 1, 1923, and December 31, 1931. The records are now too incomplete for us to obtain this information for the reasons stated in interrogatory No. 5. Our records indicate that Mr. H. L. Wilkinson's commission on this loan would have been $440.00, but we are unable to determine definitely from our records whether or not this amount was paid him.''

In answer to interrogatory 11: "It is impossible to answer this interrogatory for the reason stated in our answer to interrogatory No. 5."

The answers to the first set of interrogatories, stating that it was impossible to give the information called for, were not satisfactory to appellants. A motion was made to dismiss the plaintiff's suit, which at first was overruled, but later the plaintiff was ordered to answer more specifically. Further interrogatories were propounded, twenty in number, three of which we have set out above, with the answers thereto.

After the second set of interrogatories, examples of which were given above, had been answered as shown by the record, the attorney for the defendants notified the company, the appellee here, that the answers were not satisfactory, and gave notice that they would move to dismiss the suit if not answered fully, etc.; to which the appellee replied, through its attorney, that its officers had made every effort to answer the interrogatories to the best of their ability, and that he "indulged the hope that you will understand that he has done his best to supply the information requested;" and the letter further states, "I would suggest that you talk with Mr. . . . about this matter, and tell him that I would be very glad to have him, or anyone he wants to send, come to our office and make a complete and full inspection of any files or records that we have, and I will ask you to assure him that we have no intention of trying to withhold any information from him. He is welcome to spend as much time as he desires going through these old files and through any and all of our records, and I am sure if he will do this, he will understand how impossible it is for us to answer the questions he asks."

Instead of availing themselves of the offer to submit the files to the inspection of the defendant, the appellants moved to dismiss the plaintiff's suit under section 1551 of the Code of 1930, for failure to answer the above interrogatories.

In attempting to answer the interrogatories it was disclosed that the plaintiff had moved its offices a number of times during the period involved in the inquiries and that noncurrent files had been stored in a confused way, so that it was impossible, within reason, to answer the very comprehensive interrogatories propounded. It also disclosed that the plaintiff had employed the person who had been longest in its service, in the effort to secure the information, but owing to the fact that there was no index to the files, and that they were stored in such manner that it was practically impossible to go through them, this was not practicable; also, that the files pertaining to the particular loan here involved had been sent to the Prudential Life Insurance Company, and consequently were not in possession of the appellee. It also appears from the record that about ten million dollars had been loaned in the period covered.

A second motion was made to dismiss the suit for failure to answer the interrogatories, as defendants in the court below seemingly thought the plaintiff was under obligation to do under the statute, section 1551 of the Code. The court overruled, or failed to sustain, this motion to dismiss, and testimony was taken by both parties to the suit, quite voluminous, but its character, we think, is sufficiently indicated by the statements already made.

At the conclusion of the testimony each side requested a peremptory instruction, and the court granted the request of the plaintiff.

The first question here presented is, whether or not the plaintiff was doing business in the state, within the meaning of sections 4140 and 4164 of the Code. In considering this question, it must be noted that every natural person, and most of the corporations, are authorized by law to do both interstate and intrastate business. The power to do interstate business is derived from the federal government, and the states have no power to abridge this

right, or to interpose any burden or regulation materially affecting it. See volume 3 of U. S. Sup. Ct. Digest, title, Commerce, sections 35 and 36, and authorities there cited.

From these authorities it will be noted that the power of the federal government as to interstate commerce is only limited by restrictions in the Federal Constitution, and that the states have no power over the subject. In other words, the power to do interstate business is not derived from the state government. It is true that the police power of the state has a very restricted operation in regulating matters pertaining to the public health, etc.

Among the authorities mentioned in the above sections of the U. S. Sup. Ct. Digest is "The object of vesting in the general government the power to regulate commerce with foreign nations and among the states was to insure uniformity of regulations and to prevent discriminatory state legislation. Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347." The power under the Federal government to carry on interstate commerce carries with it the use of the necessary means and appliances and instrumentalities for that purpose, and under the law of the United States, as decided, a person or corporation living or domiciled in a state has a right to solicit such commerce in other states, so long as its agents do not transact or complete the business in other states; which business must be consummated by the person or corporation, or its agent, in the state where the corporation is domiciled, or where the person lives. It is not here necessary to enter into an elaborate analysis of these authorities. They are sufficiently indicated in the citations already given, and in York Mfg. Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611; Crenshaw v. Arkansas, 227 U. S. 389, 33 S. Ct. 294, 57 L. Ed. 565; Kirmeyer v. Kansas, 236 U. S. 568, 35 S. Ct. 419, 59 L. Ed. 721; Heyman v. Hays, 236 U. S. 178, 35 S. Ct. 403, 59 L. Ed. 527; and Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832.

There are many cases in Mississippi in which it has been decided that a corporation in another state is not doing business in Mississippi—that is to say, is not doing intrastate business therein—merely because it has employees or agents in the state to solicit orders to be transmitted to the principal, or to perform acts incidental to its interstate commerce. See Saxony Mills v. Wagner, 94 Miss. 233, 47 So. 899, 23 L. R. A. (N. S.) 834, 136 Am. St. 575, 19 Ann. Cas. 199; Hessig-Ellis Drug Co. v. Wilkinson, 115 Miss. 668, 76 So. 570; Union Cotton Oil Co. v. Patterson, 116 Miss. 802, 77 So. 795; Harleston v. West Louisiana Bank, 129 Miss. 111, 91 So. 423; Dodds v. Pyramid Securities Co., Inc., 165 Miss. 269, 147 So. 328; Long Beach Canning Co. v. Clark, 141 Miss. 177, 106 So. 646; C. I. T. Corp. v. Stuart, 185 Miss. 140, 187 So. 204; North American Mortg. Co. v. Hudson, 176 Miss. 266, 168 So. 79.

The acts of the plaintiff, appellee here, as shown in the record, do not constitute doing business within the state under sections 4140 and 4164 of the Code. In Wiley Electric Co., etc., v. Electric Storage Battery Co., 167 Miss. 842, 147 So. 773, it was said: ''In considering question whether foreign corporation is doing business within state, fact that it is authorized to do business therein justifies inference that it is doing business as authorized.''

In Marx & Bensdorf v. Land Bank, etc., 178 Miss. 345, 173 So. 297, it is said: ''One test of whether foreign corporation is 'doing business' within state within statute barring suit by foreign corporation doing business in state which does not file power of attorney to receive service is whether it is doing such acts as are within the function of its corporate powers.''

This announcement of law must be construed in connection with the character of business which the corporation is doing in the state; that is to say, whether it is an intrastate business conducted under its charter, in which case this rule applies. The rule refers to intrastate business, not to interstate business. On the facts in the

case of Marx & Bensdorf v. Land Bank, supra, the business transactions were done and completed in Mississippi. As indicated above, a corporation may be engaged in business both intrastate and interstate; and the authorities above cited show that sections 4140 and 4164 of the Code are only applicable to a corporation doing intrastate business.

Bearing this distinction in mind, there is no conflict upon this subject in the decisions rendered in this state. Sometimes this distinction is not clearly made, but it must be carried in mind in interpreting the decisions. We consequently hold that the court did not err in ruling that the facts involved in this case do not show this to have been business transacted within the state, within the purview of sections 4140 and 4164.

The question then presents itself as to whether the court erred in its ruling, refusing to dismiss the suit because the answers to the interrogatories were not sufficiently full and complete to comply with the requirements of section 1551 of the Code. This section is intended to promote the administration of justice, and to reduce expenses in so doing, and is not for the purpose of hindering or defeating the administration of justice. If given the full import contended for by the appellant the section is capable of constituting a denial of due process of law; but we are not willing to adopt such construction. See Federal Trade Commission v. P. Lorillard Co., 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696, 32 A. L. R. 786; Hiawatha Gin Co. v. Mississippi Farm Bureau Cotton Ass'n, 138 Miss. 605, 103 So. 345. The section was intended, of course, to enable resident parties to a suit to take the evidence of a nonresident party for use in the suit. It was not intended to enable the resident party to explore all the business affairs of his adversary. The evidence sought to be elicited by the interrogatories must be such as are pertinent or relevant to the litigation under consideration, and should not be used in such way

as to impose a burden upon the adverse party which would tend to defeat his rights before the court.

Under the statute, the information sought through the interrogatories propounded by the appellant in this case exceeded the permissible limits, because many of the transactions inquired about had no relation to the suit here. Interstate business is involved in this suit, and even though the plaintiffs may have done intrastate business with other parties, that would have no bearing on the present suit. Of course, we do not mean to insinuate or hold that any of the transactions were intrastate business. We do hold that much of the matter so inquired about was irrelevant to the litigation under consideration, and that if the statute were applied to the extent contended for by appellant, it would impose such a burden upon the right to sue as practically to defeat it. And this may not be done.

No law, either of Tennessee or of any other state, has been called to our attention, requiring the keeping of an index to the various files throughout the months and years during which a person or corporation may have transacted a business.

Since there is no legal requirement to that effect, we cannot hold that the plaintiff was under the necessity to keep such an index, or to preserve all of its original files in such order as to be readily accessible. So far as the evidence may be relevant and admissible to establish a particular claim, the statute may be used to compel the giving of information possessed by the adverse party. Kept within proper limits, it is a highly useful statute; but every court has the power to prevent abuse of its process; 14 Am. Jur. 370, sec. 171 and note 9; Hiawatha Gin Co. v. Mississippi Farm Bureau, etc., supra.

The proper procedure to challenge the interrogatories, and thereby secure the judgment of the court as to the relevancy and propriety of the evidence sought, would have been to move to suppress them before undertaking to answer; or else to take exception thereto, for the rea-

son, that the interrogatories exceeded the statutory requirements. It would be unfair and unlawful to require an extensive, prolonged and expensive search for evidence, unless it reasonably and specifically appears that the evidence was proper and relevant. The statute has been construed to be a method of taking depositions, and of course is under the control of the courts; and while the courts must not unduly limit the operation of the statute, they must not permit its use as an instrumentality for destroying litigable rights.

The file on the particular loan here in question was shown to be, not in possession of the plaintiff, but in that of the Prudential Life Insurance Company. If information sought by the defendants in regard to other transactions on the part of the plaintiff were considered relevant to this matter, this should have been submitted to the court, that it might decide the question.

We have given this case an unusual degree of consideration on this point, for it is manifest that there are limits to the burden which may be imposed under the statute.

We find no reversible error, and the judgment will therefore be affirmed.

Affirmed.

### On Suggestion of Error.

**Smith, C. J.**, delivered the opinion of the court on suggestion of error.

The only response necessary to this suggestion of error is that we will assume that counsel for the appellants are correct in saying that we were in error in stating in the opinion rendered herein that the local correspondents of the appellee who received the applications for loans to be negotiated by it, were the borrower's and not the appellee's agents. But this error is of no con-

sequence for the same result would be reached if these local correspondents were in fact the agents of the appellee; and the opinion may be read in the light of this assumption.

Overruled.